834 So.2d 380 (2003)
Jay L. POLLEN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-1437.
District Court of Appeal of Florida, Third District.
January 15, 2003.
*381 Bennett H. Brummer, Public Defender, and Lisa Walsh, Assistant Public Defender, and Gwendolyn Powell Braswell, Assistant Public Defender, for appellant.
Charlie Crist, Attorney General, and Michael J. Neimand, Assistant Attorney General, and Alison F. Smith, Certified Legal Intern, for appellee.
Before LEVY, SHEVIN and RAMIREZ, JJ.
*382 RAMIREZ, J.
Jay L. Pollen appeals from his convictions for grand theft, escape, and witness tampering. We affirm the convictions for grand theft and witness tampering, but reverse the conviction for escape.

I. FACTS
Boris Mancilla, a security associate at K-mart, saw Pollen enter the store and followed him to the health and beauty department. Pollen removed a plastic shopping bag from his pocket and proceeded to fill it with different types and sizes of eye drops. Pollen then left the store. Mancilla stopped him outside and asked him to return inside to the security office. When Pollen complied, Mancilla explained that a police officer was on his way.
When the police officer arrived, Mancilla, Pollen and another shoplifter were in the security office. Mancilla then left the office while the officer was filling out his paperwork. Two minutes later, Mancilla saw Pollen running past the registers at the front of the store, followed by the police officer, who then tackled and handcuffed him.
As Pollen was being led from the store, he told Mancilla, "I am going to come back and see you." Upon hearing this remark, Mancilla felt threatened. Pollen returned to the store a few days later. When Pollen was about to enter the store, Mancilla told Pollen he should not be there, he should stay away. Pollen did not respond and left. Mancilla testified that he was scared when he saw Pollen and considered not testifying.
Initially, a tally of the merchandise which Pollen took added up to $299.51, which would have been a misdemeanor. The next day, the cashier told Mancilla that the correct total was $302.50. Pollen was subsequently charged with grand theft, resisting an officer without violence, escape, and tampering with a witness. Mancilla was the only witness to testify at trial. The trial court granted Pollen's motion for judgment of acquittal with respect to resisting an officer without violence, but denied judgments of acquittal as to the other three counts. The jury found Pollen guilty of theft of more than $300, escape, and witness tampering.

II. ESCAPE
Section 944.40, Florida Statutes (2001) provides, in pertinent part, that "[a]ny prisoner ... being transported to or from a place of confinement who escapes or attempts to escape from such confinement commits a felony of the second degree." Transportation begins when the suspect is placed under arrest. See State v. Ramsey, 475 So.2d 671, 672 (Fla. 1985). It has been extended to suspects who flee after being placed under arrest. See Brown v. State, 623 So.2d 800 (Fla. 4th DCA 1993). However, it does not apply to suspects who have merely been detained.
To be convicted of escape, there must first be a valid arrest. See Thomas v. State, 805 So.2d 102, 104 (Fla. 4th DCA 2002). A valid arrest consists of four factors: (1) a purpose or an intention to effect an arrest under real authority; (2) an actual detention of the person being arrested by a person having the present power to control the person arrested; (3) a communication by the arresting officer to the person whose arrest is sought of the intention to effect an arrest; and (4) an understanding by the person whose arrest is sought that it is the intention of the arresting officer to arrest and detain him. Id. (citing Kyser v. State, 533 So.2d 285, 287 (Fla.1988)).
The testimony, at best, supported the conclusion that Pollen was detained. Because the police officer did not testify, *383 there was no evidence that Pollen was either under arrest or that the police officer intended to effect an arrest. When Mancilla left the security office, Pollen was being detained for a misdemeanor. Under section 901.28, Florida Statutes (2001), the officer had the option of giving Pollen a notice to appear.
Without testimony from the police officer as to what was communicated to Pollen while they were in the office, there is no evidence of a valid arrest. We do not know if the officer intended to arrest Pollen, or that Pollen knew that the officer intended to arrest him. Running from an officer after being detained may amount to resisting arrest without violence, but without more, does not establish the charge of escape.

III. WITNESS TAMPERING
Pollen's conviction for witness tampering rested on Mancilla's testimony that Pollen said he was coming back to see him and in fact came back a few days later. Section 914.22(1)(a), Florida Statutes (2002) prohibits intimidation, physical force, or threats with "intent to cause or induce any person to: (a) Withhold testimony... from an official investigation or official proceeding." See also State v. McGraw, 474 So.2d 289 (Fla. 3d DCA 1985).
The State may establish that a person intends to cause or induce another to withhold testimony by circumstantial evidence. See State v. Atkinson, 490 So.2d 1363, 1365 (Fla. 5th DCA 1986). In reviewing a motion for judgment of acquittal, a de novo standard of review applies. See Pagan v. State, 830 So.2d 792 (Fla.2002). Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence. See Donaldson v. State, 722 So.2d 177 (Fla.1998). If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. See Banks v. State, 732 So.2d 1065 (Fla.1999). However, if the State's evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence. See Orme v. State, 677 So.2d 258 (Fla.1996).
The defense has offered no explanation for Pollen's behavior which would be consistent with a reasonable hypothesis of innocence. Pollen's return visit intimidated Mancilla. Whether a statement or other communication constitutes a true threat which has the probable consequence of causing reasonable apprehension in the hearer is a question of fact for the jury. See Gill v. State, 622 So.2d 92, 93-94 (Fla. 2d DCA 1993). It was not unreasonable for Mancilla to be apprehensive and to consider not testifying.
In Atkinson, the defendant approached the witness' car, struck the witness in the face, ordered the witness out of the car "to settle the matter." The court stated that, although it was not clear what "the matter" meant, Atkinson's actions could be read as an intentional threat that Atkinson would "settle the matter" with his fists rather than in court. This implied that the witness should not testify.
Thus, facially innocent remarks or actions, when viewed in context, may take on a more ominous meaning. Pollen had no reason to return to see Mancilla. His statement could therefore reasonably be interpreted as a threat, and coupled with Pollen's subsequent visit, can reasonably be interpreted as a concerted effort to *384 dissuade Mancilla from testifying. The legal system should protect witnesses willing to fulfill their civic duty by testifying in court.

IV. CONCLUSION
Because the elements of the crime of escape were not met, Pollen's motion for judgment of acquittal as to that charge should have been granted. We affirm his convictions for grand theft and witness tampering, and reject the remaining points on appeal.
Affirmed in part, reversed in part.